## Case No. 1,900.

### BRITISH CONSUL v. TWENTY–TWO PIPES AND TEN HOGSHEADS OF WINE.

[Bee, 178.][1]

District Court, D. South Carolina. 1801.

SALVAGE—RESTITUTION—COMPENSATION.

1. Restitution, upon payment of salvage, will be adjudged in all cases, if the original owners can be found.

---

[1] [Reported by Hon. Thomas Bee, District Judge.]

2. Salvage never should exceed more than one half of property saved.

[Compare Sprague v. One Hundred and Forty Barrels of Flour, Case No. 13,253; The Waterloo, Id. 17,257.]

BEE, District Judge. From the pleadings and evidence in this case it appears that the brig Anthonio, Ward, master, on a voyage from Oporto to Dublin, encountered bad weather, and sprung a leak of so dangerous a kind, that, after consultation with the crew, it was agreed to stave the cargo. Five days after this, they agreed to bear away for the first land. On the day following, they fell in with the Criterion, Smith, master, bound from Dublin to Charleston. By him they were supplied with some provisions. It appears that as soon as Smith's boat went alongside with these provisions, all the seamen of the Anthonio quitted her, to go on board the other vessel. This was prevented by Smith at Ward's request; and the men were immediately sent back. Smith then went, himself, on board the Anthonio, and offered to take her captain and all her crew into his ship, if they chose to leave the Anthonio. Ward, finding his seamen resolved to do so, was obliged to comply with this offer; his mate refused at first, but was at length induced to do as the rest did.

It appears that Captain Smith then endeavoured to save what he could of the cargo; but the wine, and a hawser, mentioned in the libel, were the only articles that could be removed from the Anthonio. They were employed and detained two days in effecting this; after which they left the vessel, and proceeded to Charleston.

Restitution is prayed by the British consul, on behalf of the owners, on payment of a reasonable salvage.

Captain Smith by his claim and answer admits the facts stated in the libel, as to the situation of the vessel and crew; but says that he had no idea of attempting to save any part of the cargo, till the crew had finally abandoned the ship: and adds that he would not have engaged in that business at all, if he had not thought that he should be entitled to the whole of what he might save. The pleadings are, in all material points, supported by the evidence. It was, indeed, insinuated that Smith had induced the seamen to quit the Anthonio; but there is no proof of this. On the contrary, it appears that, in one instance, he repelled them from boarding his vessel; and that he did not ultimately receive them till the captain and mate came also. They did so, it is true, unwillingly, and would certainly have remained with their ship, if the crew would have consented to remain. It appeared from exhibits that the Anthonio and her cargo belonged to Messrs. Myler, Sen. and Jun. one of whom resides in Dublin, the other in Oporto.

In arguing the cause, the counsel for the libellant admitted that a reasonable salvage

should be allowed. He quoted several cases heretofore determined in this court, and contended that under the circumstances of this case, one fourth would be fully sufficient for salvage.

On the part of the claimant it was said that, this being a case of derelict, the whole must vest in the salvors, or finders. The right of the sovereign, in many countries, by municipal regulations, to property thus circumstanced, was conceded; but it was contended that no law of this nature exists in the United States, and, of course, the first finder is entitled. That the civil law gives no remedy to the original owner in cases of property derelict; and to this point was quoted 3 Dallas.[2] I have read that case with attention; but cannot find that it supports the inference now contended for. The district judge who fixed the rate of salvage lays it down that the law of nations, as to cases of this sort, had long been settled on principles consonant to justice and humanity, and favourable to the unfortunate proprietors. His decree was affirmed by the supreme court. Sir William Scott's opinion in a case similar to this may be found in 1 C. Rob. Adm. 41–45. Vattel expresses himself strongly against claims of this sort. Pages 1, 23, 293. I have determined several cases of a nature similar to this, and I have heard no argument upon the present occasion to shake my former opinions. I continue to think that there is no difference between wreck and derelict, except that the property is, in the one instance, found on land; in the other, at sea. In both, the original owners, if they can be found, have a paramount claim, upon payment of reasonable salvage. I shall consider upon this, as upon every similar occasion, the merit and risque of the salvors, and the value of the articles saved.

Here, the seamen of the Anthonio refused to remain on board of her. If the master and mate had persisted in doing so, alone, their lives and the whole of the cargo would, probably, have paid the forfeit. A material service, therefore, was rendered.

The labour, necessary to remove such parts of the cargo as were saved, seems to have been great; but the risque to the Criterion and her people was small, except on the score of insurance. She was detained two days only, and did not go out of her course. Some damage was done to the boats, and some to the stern of the vessel, which must be considered in fixing the salvage. Whatever may be the value of the property saved, I do not, in any case, think myself authorized to give more than one half, by way of compensation of this sort. I shall abide by that proportion in the instance now before me; and I do accordingly order and decree that the marshal of the court pay over one

half of the net proceeds of the property saved from the Anthonio to the claimant in this cause. And that he pay over the other half of said proceeds to the British consul, for the use of the original owners: stipulation being first made to refund the same, if no such appear within a year and day from this time.

---

[2] [M'Donough v. Dannery, 3 Dall. (3 U. S.) 188.]

